# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELVIN L. JEFFERSON, | : | |
|     Plaintiff | : | |
| | : | No. 1:18-cv-01625 |
| v. | : | |
| | : | (Judge Rambo) |
| WARDEN CLAIR DOLL, et al., | : | |
|     Defendants | : | |

## MEMORANDUM

On August 16, 2018, the Court received and docketed a civil complaint from pro se Plaintiff Kelvin L. Jefferson ("Plaintiff"), a prisoner currently confined at the York County Prison ("YCP"), pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) Plaintiff has also filed a motion for leave to proceed in forma pauperis. (Doc. No. 2.) Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), the Court will perform its mandatory screening of the complaint.

## I. BACKGROUND

Plaintiff names as defendants Warden Clair Doll of YCP and Complaint Supervisor Wesley Snyder in their individual and official capacities. (Doc. No. 1. at 2.) Plaintiff alleges that on July 19, 2018, he sent a letter addressed to the Clerk of Courts for the United States District Court for the Middle District of Pennsylvania with the designation "LM" (legal mail), inscribed on the top right-hand corner of the envelope. (Id. at 5.) On July 20, 2018, Plaintiff claims that he received the letter back, which was opened outside of his presence and should not

have been because it was legal mail considered to be privileged correspondence. (Id.) Plaintiff maintains that he filed a grievance on July 20, 2018 concerning this incident, to which he received a response from Defendant Snyder dated August 3, 2018, advising him that the "North Block was under investigation as well as the mail for safety and security reasons . . . [and that] officers investigating the mail did not realize [Plaintiff's] mail was legal and opened it as part of the investigation of North Block mail." (Id.) Plaintiff alleges that the opening of his legal mail was a violation of U.S.C.S 18 §§ 242 and 1702. (Id.) For relief, Plaintiff seeks an award of one million dollars. (Id. at 6.)

## II. LEGAL STANDARDS

### A. Screening and Dismissal of Prisoner Complaints

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). If a complaint fails to state a claim upon which relief may be granted, the court must dismiss the complaint. 28 U.S.C. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis and prisoners challenging prison conditions. See 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief

may be granted."); 42 U.S.C. § 1997e(c)(1) ("The Court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Smithson v. Koons, Civ. No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)").

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550

U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. Id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)).

In conducting its screening review of a complaint, the court must be mindful that a document filed pro se is "to be liberally construed." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### B.     42 U.S.C. § 1983 Standard

In order to state a viable claim under § 1983, a plaintiff must plead: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990); Richardson v. Min Sec Cos., Civ. No. 08-1312, 2008 WL 5412866, at *1 (M.D. Pa. Dec. 29, 2008). Moreover, in order for a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violated his rights. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Solan v. Ranck, 326 F. App'x 97, 100 (3d Cir. 2009).

Therefore, supervisors cannot be liable under § 1983 under the traditional standard of respondeat superior. Santiago, 629 F.3d at 128. Instead, there are two theories of supervisory liability that are applicable to § 1983 claims: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a

policy, practice or custom which directly caused [the] constitutional harm.'" A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).

III. **DISCUSSION**

   A. **Official Capacity Claims**

Plaintiff has brought suit against both Defendants in their official capacities. (Doc. No. 1 at 2.) A state official sued in his or her official capacity is not a "person" for purposes of § 1983 when a plaintiff seeks monetary damages, as the Supreme Court has not construed § 1983 as an abrogation of the states' Eleventh Amendment immunity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 63-71 (1989). Will precludes actions for damages against state officials acting in their official capacities. Id. at 63-71 However, the state's immunity is not shared by state officers to the extent that the suit seeks prospective injunctive or declaratory relief or seeks damages from the officers in their individual capacities. Ex parte Young, 209 U.S. 123 (1908); see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635 (2002). Consequently, the Court will dismiss all claims asserted against Defendants in their official capacities with prejudice.

   B. **Respondeat Superior Claims**

Other than being named in the caption of the complaint, the body of the complaint contains no allegations of personal involvement of either Defendant Doll or Snyder. (Doc. No. 1.) This form of pleading is patently inadequate since it

fails to allege facts that give rise to a plausible claim for relief. See Hudson v. City of McKeesport, 241 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case). Indeed, the complaint is devoid of any factual averments related to either Defendant. The body of the complaint does not identify any individual Defendant engaged in misconduct, and it does not indicate how and when any Defendant was involved in the alleged wrongdoing. See id. at 422 (affirming dismissal of defendant because complaint did not provide any basis for a claim against him).

In addition to this pleading deficiency, to the extent Plaintiff claims that either Defendant is liable under § 1983 by virtue of respondeat superior, the Court notes that supervisors are not typically liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690-91 (1978). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Rode, 845 F.2d at 1207-08; see also Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (citing Rode.)

Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Rode, 845 F.2d at 1207. As set forth in Rode,

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or knowledge and acquiescence, however, must be made with appropriate particularity.

Id. at 1207.

Moreover, the filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the involvement of officials and administrators in any underlying constitutional deprivation. See Pressley v. Beard, 266 F. App'x. 216, 218 (3d Cir. 2008) (not precedential) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); Brooks v. Beard, 167 F. App'x. 923, 925 (3d Cir. 2006) (not precedential) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); Ramos v. Pa. Dep't of Corr., Civ. No. 06–1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without

9

merit."); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that prison officials' failure to respond to inmate's grievance does not state a constitutional claim), aff'd, 142 F.3d 430 (3d Cir. 1998) (table). Because Plaintiff fails to provide any allegations of personal involvement in his complaint against Defendants Doll and Snyder, both Defendants will be dismissed, as Plaintiff has failed to state a claim upon which relief may be granted.

### C. First Amendment Claim – Interference with Legal Mail

Plaintiff's complaint alleges interference with his legal mail on one occasion. (Doc. No. 1 at 5.) The Supreme Court has made clear that prisoners do not surrender all constitutional rights during their confinement, and the Supreme Court has instructed that "federal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84 (1987). The Third Circuit has explained that prisoners "do not forfeit their First Amendment right to use of the mails," particularly with respect to privileged "legal mail" exchanged with counsel, and that a "pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech." Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995), abrogated in part by Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997); Taylor v. Oney, 196 F. App'x 126, 128 (3d Cir. 2006) (reaffirming holding in Bieregu that "prison officials impinge upon the First Amendment rights

10

of prisoners when they open prisoners' legal mail outside the presence of the addressee prisoner.").

In order to state a claim of this sort under the First Amendment, a prisoner must allege that the interference with his legal mail was done according to a "pattern and practice." Jones v. Brown, 461 F.3d 353, 359 (3d Cir. 2006) ("A state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate . . . impinges upon the inmate's right to freedom of speech."). A prisoner may allege that actions were taken pursuant to a pattern or practice without the existence of a "blanket policy." See, e.g., Jones, 461 F.3d at 359 (distinguishing between a "pattern and practice" and an "explicit policy"). Prisoners need not allege or prove any "actual injury" beyond the direct injury to their First Amendment right to use the mails. Taylor, 196 F. App'x at 128.

Notably, courts have found that mere isolated incidents of opening legal mail outside of an inmate's presence, without evidence of an improper motive, is insufficient to establish a First Amendment violation. See, e.g., Nixon v. Sec'y Pa. Dep't of Corr., 501 F. App'x 176, 178 (3d Cir. 2012) ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a First Amendment violation."); Hale v. Pa Dept. of Corr., No. 3:07-cv-0345, 2010 WL 3791833, at *3 (M.D. Pa. Sept. 16, 2010) ("opening [court mail] outside [prisoner's] presence on

11

two occasions . . . does not demonstrate a pattern or practice of improper handling of his legal mail sufficient to find a First Amendment violation . . . Isolated incidents of opening legal mail outside of an inmate's presence, without any evidence of improper motive, is nothing more than an assertion of negligence, and is insufficient to establish a constitutional violation."); Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (accidental opening of a single piece of legal mail did not give rise to a claim); Beese v. Liebe, 51 F. App'x 979, 981 (7th Cir. 2002) (dismissing First Amendment claim based on allegations that four pieces of legal mail had been opened outside of inmate's presence, since the inmate presented no evidence that his legal mail had been intentionally opened, and where the inmate-plaintiff merely speculated that the prison official intended to do so); Gardner v. Howard, 109 F.3d 427, 430-31 (8th Cir. 1997) (isolated and inadvertent mishandling of legal mail not actionable); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990) (same).

In the complaint, Plaintiff alleges that his legal mail was opened outside of his presence on one occasion. (Doc. No. 1 at 1.) Specifically, Plaintiff alleges that on July 20, 2018, he received a legal letter he mailed to the Clerk of Court with "LM" inscribed to the top right-hand portion of the envelope back, which was opened outside of his presence. (Id. at 5.) Plaintiff does not allege who opened the legal mail. (Id.) However, Plaintiff avers that he filed a grievance related to this

incident, which he has attached to his complaint, along with the response from Defendant Snyder. (Id. at 5, 13, 14.) In the response to the grievance, Defendant Snyder provides that it was error of the mailroom personnel not to mail the letter and that officers investigating the mail did not realize it was legal mail and opened it as part of an investigation of the North Block mail at YCP. (Id. at 14.)

The Court finds that Plaintiff has failed to state a claim upon which relief may be granted. Plaintiff's complaint sets forth one, isolated event in which his legal mail was inadvertently opened outside of his presence. (Id. at 5, 13, 14.) Unintentionally opening legal mail outside of Plaintiff's presence on one occasion does not demonstrate a pattern or practice of improper handling of Plaintiff's legal mail sufficient to find a First Amendment violation. See Hale, 2010 WL 3791833, at *3. Because this isolated incident of opening Plaintiff's legal mail outside of his presence, without any evidence of improper motive, is simply insufficient to establish a constitutional violation, Plaintiff's complaint fails to state a claim upon which relief may be granted, and will be dismissed.

IV. **LEAVE TO AMEND**

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendments in light of the "principle

13

that the purpose of pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." Id. The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

Here, as alleged, the Court finds that allowing Plaintiff to amend his interference with legal mail claim would be futile as one occasion of opening legal mail does not demonstrate a pattern or practice of improper handling of Plaintiff's legal mail sufficient to find a First Amendment violation. See Hale, 2010 WL 3791833, at *3; Nixon, 501 F. App'x at 178, n.1 (affirming district court's dismissal of first amendment legal mail claim without leave to amend as any amendment would be futile because the underlying claim lacks merit); see also Foman, 371 U.S. at 182. Accordingly, Plaintiff will not be granted leave to amend this claim.[1]

---

[1] Furthermore, it does not appear that Plaintiff raises a First Amendment Access to the Court claim, as he has not made any allegations in his complaint that he was inhibited in presenting a past legal claim and that he suffered an "actual injury" and that he has no other remedy that may

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to proceed in forma pauperis (Doc. No. 2), will be granted and Plaintiff's complaint will be dismissed for failure to state a claim upon which relief may be granted and without leave to amend.

 s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: August 22, 2018

---

be awarded as recompense for a lost claim. See Monroe v. Beard, 536 F.3d 198, 2014 (3d Cir. 2008) (citing Christopher v. Harbury, 536 U.S. 403, 415 (2002)); Toussaint v. Good, 276 F. App'x 122, 124 (3d Cir. 2008) (affirming the denial of a first amendment claim regarding the denial of access to the courts where Plaintiff alleged no specific facts regarding the alleged harm, provided no dates of attempted filing or details describing how his litigation was affected).